SPELIOPOULOS, Respondent, vs. SCHICK and another, Appellants.

*October 12—November 7, 1906.*

*Contracts: Permission to maintain structure on sidewalk: Prevention by third parties: Recovery: Evidence: Cross-examination: Conduct of attorneys: Instructions to jury.*

1. Defendants, being lessees of a store building, gave plaintiff permission to maintain a bootblacking stand on the sidewalk adjoining such building, in consideration of a sum of money then paid and monthly payments thereafter to be made. The agreement expressly stated that defendants did not in any way guarantee to plaintiff the right to keep the premises without molestation on the part of the city or other persons than themselves. *Held*, that if plaintiff was prevented from maintaining the stand by the city, by defendants' landlord, or by any person other than defendants, he was not entitled to recover back the sum paid to defendants.

2. In an action to recover back the sum so paid plaintiff should not have been permitted to introduce in evidence a so-called permit to erect the stand, given by a city official who had no authority over the subject.

3. Plaintiff in such action having testified on the subject of his in-
   telligent understanding of the situation before making the con-
   tract, it was error to exclude, on his cross-examination, a ques-
   tion as to whether before making the contract he had consulted
   an attorney as to his right to build the stand.
4. In an action upon a contract, attempts by the plaintiff's attorney
   to show that plaintiff did not fully understand the contract, and
   to impress that as a fact upon the jury in his argument, are·
   criticised as having been intended to invoke the sympathy of
   the jury and obscure the legal rights of the parties; but whether
   such conduct was so prejudicial as to vitiate the verdict is not
   determined.
5. An instruction carrying the impression to the jury that, in the
   opinion of the judge, there was evidence from which the jury
   might find a certain fact, when in reality there was no evidence·
   whatever tending to prove that fact, was misleading and erro-·
   neous.

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge.  *Reversed.*

Defendants, being tenants under lease of a store building
at the corner of Third street and Grand avenue, in Milwau-
kee, entered into a written agreement with the plaintiff that,·
in consideration of $225 then paid and for the further consid-
eration of $25 per month to be paid on the 1st day of each
subsequent month, "permission is hereby given by us to *James.
Speliopoulos* to maintain and conduct a bootblacking stand on
the east side of Third street north of Grand avenue alongside
of the store building occupied by Schick & Ducey."   Further,
that it was understood that such permit should continue for
two years upon the above terms, and be renewable by plaintiff
for further two years at the rate of $30 per month, and fur-
ther provided that permission was given upon the understand-
ing that should *Speliopoulos* leave or remove his bootblacking
stand for any reason whatsoever he forfeits all claim, right,
and title to the $225 above mentioned; also, "in permitting
said *James Speliopoulos* to conduct said business, the said
Schick & Ducey do not in any way whatsoever guarantee said
*James Speliopoulos* the right to keep these premises without

molestation on the part of the city or other persons than them-
selves." Plaintiff, before the making of the agreement, had
obtained a written formal permission to maintain the stand on
the sidewalk from the mayor, who had no authority whatever
to give it, the board of public works being vested with all such
authority, and exhibited same to the defendants. After mak-
ing of the contract plaintiff employed a carpenter to construct
the stand, some twenty feet in length, four feet in width, and
brought it to the place where he commenced its erection. He
was there interrupted by a policeman, to whom plaintiff ex-
hibited his permit, whereupon, according to the plaintiff's evi-
dence, the policeman said "go ahead," and, according to the
policeman's testimony, forbade further proceedings until a
proper permit from the board of public works was obtained.
The carpenter continued to construct the stand, when it was
again forbidden by a wholly unascertained person described
as a man who called himself a lawyer. Plaintiff appealed
repeatedly to the defendants, and as to their conduct a distinct
issue of fact arises, the defendants claiming that they repeat-
edly said to him that they had nothing to do with other peo-
ple's objections, they were willing he should proceed and
thought he had a perfect right to; plaintiff claiming that,
after first so stating, they afterwards told him that he could
not build, but must take his stuff and go away. This, after
some days, he did, and demanded return of his money, which
they refused, and this action was brought to recover his dam-
ages from the breach of their agreement. The jury returned
a verdict in favor of the plaintiff for $225 "forfeit" and $125
paid to the carpenter. From judgment entered upon such
verdict, after motion to set it aside, defendants appeal.

For the appellants there was a brief by *Churchill, Bennett
& Churchill,* and oral argument by *W. H. Churchill.*

For the respondent there was a brief by *W. B. Rubin,* and
oral argument by *W. C. Zabel.*

DODGE, J.   Obviously the erection and maintenance of a bootblacking stand upon the sidewalk adjoining premises is an invasion of two distinct rights: those of the person lawfully in possession of the premises and those of the public at large in the street.   Whether it also infringes upon any rights of the owner of a reversionary title in the premises need not be decided in this case.   As each person whose rights are so invaded can object to the erection of such structure, he can also waive such right to object, but merely as to himself.   Neither can grant a fully effective privilege to maintain such a structure.   Clearly, the written instrument executed by the defendants was a mere permission, a mere agreement not to urge the objections which they might against the plaintiff's erecting and maintaining the stand at the place designated.   Such would be quite obviously the effect of the instrument even without the last paragraph, but that puts beyond dispute their purpose to confer no rights upon the plaintiff against any one but themselves, and they could be guilty of no breach of that contract except by raising the objections which they thereby agreed to waive.   Further, it is apparent that the $200 paid in advance was in no sense a forfeit or security, but a price paid for the permission given, to which was to be added the monthly instalments of $25 each as further compensation for that same permission.   In the light of this construction of the contract, there could be no breach thereof on the defendants' part by reason of the interference with plaintiff's occupancy by any one except themselves or one acting under their authority.   There was evidence from which the jury might have found that the defendants did so interfere, hence that question was a legitimate one for the jury.   There was also evidence that plaintiff's failure to erect and maintain his stand was due to prevention by a police officer acting as representative of the city, the guardian of the rights of the public in the street.   There is also some evidence of interference by

a somewhat mythical "man" who "called himself a lawyer," to which, so far as the evidence goes, plaintiff need have paid no attention, but for which no responsibility of defendants is shown. In this situation, clearly the only question for the jury to pass upon was, on the one hand: Was plaintiff prevented from maintaining his stand by the defendants? On the other hand: Did he refrain from so doing entirely by reason of the acts of either the city or this supposed lawyer? If the former, he may have been entitled to recover back that which defendants had received from him and to recover such damages as were reasonably to be anticipated from a breach of the contract. If the latter, he had no right to recover against the defendants at all. Two instructions to the jury, which are assigned as error, departed radically from this view. Those instructions were to the effect that if plaintiff was prevented from erecting his stand by either the defendants, the city, or the landlord he would be entitled to recover back the money paid by him; and that if he was prevented either by the defendants or by the landlord, he was entitled to recover from the defendants the sums expended by him in preparation to erect. In both of these instructions, by the reference in the one to the city or the landlord, and in the other to the landlord, fatal error was committed, for which the judgment must be reversed.

The reference to prevention by the landlord was also erroneous upon another ground, namely, that it carried to the jury the impression that there was evidence, in the opinion of the judge, upon which they might find that the landlord had interfered with the plaintiff, while the record is wholly barren of any evidence having such tendency. Such an instruction is misleading and erroneous. *Musbach v. Wis. C. Co.* 108 Wis. 57, 69, 84 N. W. 36.

Certain detail errors are assigned, to which, perhaps, some attention should be given, in view of the fact that a new trial may ensue. Plaintiff was allowed to introduce, over objec-

tion, a so-called permit from the mayor to erect the stand. It appearing by the charter of Milwaukee that the mayor had no authority whatever over the subject, but that all authority was vested in the board of public works, from whom only, if any one, could a legal permit be issued, it is difficult to see any materiality to this paper. Its prejudice, however, is not so obvious, though it is argued that it was made use of to urge upon the jury the good faith of plaintiff and to arouse sympathy in his behalf. If so, it may be that it was prejudicial. It is always best to exclude evidence that has no relation to the issues on trial, for it is difficult to measure its effect on such false issues as that above suggested. The paper should have been excluded.

We can see no reason for excluding a question asked of the plaintiff on cross-examination, whether before making the contract he consulted an attorney as to his right to build the stand. He had testified on the subject of his intelligent understanding of the situation before making the contract, and this question was entirely in line with the evidence so given.

Complaint is made because plaintiff's attorney attempted to show an imperfect understanding by the plaintiff of the contract, and undertook to impress that as a fact upon the jury in his argument. The court, however, at every step overruled him in such attempts, hence no technical error on the part of the court was committed, and, since the judgment must be reversed on other grounds, we need not consider whether such prejudice could have resulted from the conduct of the plaintiff's attorney as to vitiate the verdict. We are moved to say, however, that, as plaintiff was suing upon the contract, the fact of incomplete understanding thereof could have been offered for no reason but with a view to invoke sympathy from the jury, which would have been an entirely false issue, and, if effective at all, would but have tended to obscure the legal rights of the parties, which are wholly independent of it. No counsel, bound by his oath as he should be by his

conscience to the promotion of justice according to law, ought to permit himself to so obstruct or obscure it, even in the fervor of a jury trial.

None of the other assignments of error are of sufficient gravity to warrant discussion.

*By the Court.*—Judgment reversed, and cause remanded for new trial.